# MUSA-OBREGON & ASSOCIATES
### ATTORNEYS AND COUNSELORS AT LAW
55-21 69TH STREET
MASPETH, N.Y. 11378
TEL (718) 803-1000
FAX (718) 507- 8496
musaobregonlaw@gmail.com

S. MICHAEL MUSA-OBREGON*
_____
MAYRA VELEZ*
JUAN CARLOS MONTEZA*
SUSAN N. ROSTI **
JOSHUA MATIC*

NEW JERSEY OFFICE

SUSAN N. ROSTI, ESQ.
177 OUTWATER LANE
GARFIELD, NJ 07026

*Admitted only in NY. Practice in NJ limited to Immigration and Nationality Law.
**Admitted in NJ, NY

<u>TO BE FILED UNDER SEAL</u>

<u>BY ECF AND HAND DELIVERY</u>

August 4, 2008

The Honorable Brian M. Cogan, USDJ
U.S. District Court for the Eastern District of New York
225 Cadman Plaza
Brooklyn, NY

<u>RE: USA v. Margarita Santiago  7-Cr- 99 (BC)</u>

Dear Judge Cogan:

I write the Court this letter in aid of sentencing for Mrs. Margarita Santiago currently scheduled for sentence before Your Honor on August 5, 2008 at 3 pm. While Mrs. Santiago is extremely contrite about her actions, we hope that the following information may assist the court in formulating a just sentence.

## **FACTORS TO BE CONSIDERED UNDER 18 U.S.C. § 3553(a)**

As the Court knows, the United States Supreme Court held the Sentencing Guidelines to be advisory in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). Although courts still Consider the Guidelines range, 18 U.S.C. § 3553(a)(4)&(5), they also must consider all of the other factors identified in 18 U.S.C. § 3553(a).  <u>Id</u>.  Courts no longer have to sentence a defendant within a narrow range unless an "extraordinary" circumstance removes their case from "the heartland." 3553(a) requires a court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  These are:

> A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> C) to protect the public from further crimes of the defendant; and
> D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a) also directs courts to consider the nature and circumstances of the offense and history and characteristics of the offender, the kinds of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty for similar conduct, and the need to provide restitution to any victims of the offense.

## SENTENCING DISCUSSION

Mrs. Santiago pled guilty pursuant to a plea agreement to the single count of money laundering of which she was accused, in an eighteen count indictment which charges her and eight other individuals of participating in a narcotics conspiracy.  Notably, according to the Presentence Investigation Report (PSR), the case agent has informed that Mrs. Santiago herself was responsible for laundering *a total of $40,000 in this case for which she received $400 in compensation*. (see PSR at p. 8 and 9.).  Because she received less than 1 percent of the proceeds of the launder funds, the Probation Department also recommends to the Court that Mrs. Santiago receive *a minor role adjustment*.

At the outset we ask the court to consider who Mrs. Santiago is as a person.  First, she is a grandmother who is fifty nine years old, a mother of four children, who is considered a very kind, caring person as attested to by the letters of support from the members of the community that have taken their time to write and inform the Court of who she has been to them. Significantly, during Mrs. Santiago's earlier years, she did not receive an adequate education, attending only grammar school for several years, stopping school because of the economic needs of survival of her family in Colombia. Also notable is the fact that Mrs. Santiago had also been a single parent to the son born of her second marriage, Jason Manco, who is twenty-two years old.

Mrs. Santiago had kept out of trouble for many, many years before the current arrest. Her brushes with the law in the past were almost 18 years ago, for several street –level transactions under 20 dollars each.  Despite the mistakes of her youth, she had overcome any temptation to sell drugs for almost 18 years -her last arrest was in 1990. Mrs. Santiago had also worked a job at the U.S. Tennis Open, where she worked at year after year since 1989 through 2002 (thirteen consecutive years) and then from 2004 through 2007, as a cleaning lady whereby she earned an honest living at $10 dollars per hour. This information has been verified by the PSR which obtained her W-2's for many of those years. *See PSR at 18*.  From 2002 and 2004 she could not work due to a severely debilitating back injury after a car accident.  *See PSR at p. 20*. At the time of her arrest, Mrs. Santiago was employed at a beauty salon and sold plastic jewelry and trinkets there to eke out a living. Because she had been previously deported, she used an alias (her sister's name) during the time that she remained arrest-free since 1990.

In sentencing Mrs. Santiago, we ask the Court also to consider that incarceration for Mrs. Santiago has been an extraordinarily difficult experience, accompanied by a deterioration of her extremely fragile psychological situation. We also point out the fact that shortly after she talked with government agents who were handling her case, persons who believed she provided information about carried out a brutal sidewalk attack against Jason Manco, her twenty year old teenage son, which resulted in intensive care treatment at Flushing Hospital, a severely broken jaw and several weeks of hospitalization.  *See Probation Report at p. 17*.  Prior to the attack, the son was asked if he was the son of Margarita Santiago and told that "his mother better keep her mouth shut." The attackers also threatened to kill Ms. Santiago upon her return to Colombia.  Mrs. Santiago was immediately severely traumatized by these events, culminating in a suicide watch on several occasions while in custody at the MDC, and treatment by tranquilizers and other anti-depressant medications.  While it is not clear if any third parties learned of any meeting with the government and Mrs. Santiago, the preceding

information was promptly communicated to the government by undersigned counsel and was duly investigated by government agents.  The perpetrators however, have never been apprehended and Mrs. Santiago lives in permanent fear that they will seek to extract revenge on her or her son for any of their perceived indiscretions on the part of Mrs. Santiago.

The PSR contains corroboration of Mrs. Santiago's extremely fragile state of mind; this information has been corroborated by the Probation Department's review of Mrs. Santiago's psychological records at the MDC.  Mrs. Santiago has been extremely clinically depressed and is constantly petrified at the thought of her being killed upon arriving in Colombia (*see PSR at p. 17*) after her certain deportation.  Additionally, because of an ill-fated car accident in 2002 in which her back was fractured, she has undergone a tremendous amount of unmitigated physical pain while incarcerated at the MDC.  *See PSR at p. 18*.

## ANALYSIS OF FACTORS UNDER 18 U.S.C. § 3553(a)

*Mrs. Santiago has been incarcerated since March 28, 2007, now for more than seventeen months.*  This period has allowed her to very seriously reflect on the gravity of her offense and the tremendous impact this incarceration has had on her life, particularly in her advancing years, especially considering the emotional trauma she has under gone by the events involving her son.  The amount of proceeds she laundered, however grave and serious, was not an astronomical figure.  Because of the effects of her current incarceration, her advancing age, and the nature of her recent track record prior to the instant arrest, it is *unlikely* that Mrs. Santiago ever re-offend again.  With the blow of this case and shock to her life and that of her family as well as her impending deportation, we submit the chances of her re-offending again are exceedingly small.

A punishment of time served, under these particular circumstances, for this particular defendant and offense conduct would be commensurate with both the spirit and letter of the objectives under 3553(a).  This punishment would highlight the seriousness of the offense and promote respect for the law; serve as a deterrent for this type of offense conduct for the outside world; and provide just punishment for the offense.  This punishment would also allow the defendant to receive the significant psychiatric and medical care outside of an institutional setting which she so desperately needs.

For all of these reasons, we submit that a sentence of time served with as many other stringent conditions as possible is the correct sentence for Mrs. Santiago.  For all of these reasons, we respectfully request that Your Honor sentence Mrs. Santiago to time served, with all the necessary conditions and any other punishment that the court finds necessary under §3553(a).

Respectfully submitted,

S/ S. Michael Musa-Obregon,
S. MICHAEL MUSA-OBREGON, ESQ.


cc:     AUSA Bonnie Klapper

.